United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDDIE LOUIS BENNETT, | No. C 07-2261 SI (pr) |
| Petitioner, | **ORDER OF DISMISSAL** |
| v. | |
| BEN CURRY, warden, | |
| Respondent. | |

## INTRODUCTION

Freddie Louis Bennett, a prisoner incarcerated at the Correctional Training Facility in Soledad, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge a disciplinary decision. Respondent now moves to dismiss the petition for lack of habeas jurisdiction, arguing that the claims must be pursued, if at all, in a civil rights action. Bennett opposes the motion. For the reasons discussed below, the court will dismiss the action.

## BACKGROUND

Bennett is serving an indeterminate sentence of seven years to life imprisonment on a 1975 conviction for first degree murder. At the time of the disciplinary decision at issue here, he was about thirty years into that sentence and was long past his minimum eligible parole date.

Bennett received a CDC-115 rule violation report on August 29, 2005, while he was incarcerated at Mule Creek State Prison. He was charged with "pressuring/extorting inmates for payment." Bennett's Exh. D. On or about September 17, 2005, a hearing was held on the CDC-

115. Bennett was found guilty of "extorting inmates for payment." Bennett's Exh. G, p. 1. The discipline imposed consisted of a loss of 91 days of behavioral credit. <u>Id.</u> at 4. Also, Bennett was counseled and reprimanded. <u>Id</u>  There is no evidence that there was any other discipline imposed.

In his federal habeas petition, Bennett claimed that his rights were violated during the disciplinary proceedings. The court reviewed the petition and found that it stated cognizable due process claims that the evidence was insufficient to support the decision and that the decision-maker was biased, and dismissed all other claims. Order To Show Cause, p. 3.

The habeas petition in this action does not challenge to the 2007 decision of the Board of Parole Hearings ("BPH") to deny parole for Bennett.[1] Nonetheless, his parole hearings in 2004 and 2007 bear upon his challenge to the 2005 disciplinary decision because Bennett contends that the disciplinary decision adversely affected his parole consideration in 2007. In opposition to the motion to dismiss, Bennett produced a very limited part of the transcript (i.e., two non-consecutive pages) of the 2004 parole hearing at which he was found unsuitable for parole, and the decision portion of the transcript of the 2007 parole hearing at which he was again found unsuitable for parole.

The excerpt from the 2004 hearing shows that a BPH commissioner cautioned him that further disciplinary reports (i.e., CDC-115s) would be a problem. <u>See</u> Opposition Exh. 2, 12/23/04 RT 59 ("No more 115's. You get another 115, I guarantee you that will set you back the next time you come before the Board.") The limited portion of the transcript available also suggests that Bennett's changing story about the offense was a critical factor in the BPH's decision. <u>See</u> <u>id.</u> at 57:18-26. The 2004 denial was a one-year denial of parole. Bennett apparently put off the next scheduled hearing in 2005 because of the pendency of the CDC-115. His next parole hearing occurred in 2007.

In 2007, the BPH again denied parole for Bennett. The transcript of the 2007 parole

---

[1] If Bennett wants to challenge the 2007 parole decision, he may file a separate habeas action, but not until he exhausts state court remedies as to all claims he wants to present in federal court with regard to that decision.

2

hearing decision makes it quite clear that it was not only the 2005 CDC-115 that caused the BPH to find Bennett unsuitable for parole, although that disciplinary offense posed a significant concern for the BPH. The BPH denied parole based on the nature of the commitment offense, Bennett's criminal history, his unstable social history, his insufficient participation in beneficial self help programming, his disciplinary history that included a total of 19 CDC-115 rule violation reports and 19 CDC-128 counseling memoranda, the need for a new psychological evaluation, and the need for firmer parole plans. See Opposition, Exh. 3, 8/13/07 RT 97-106. A BPH commissioner stated that Bennett needed further self-help with regard to understanding the causative factors of the life crime: "We certainly have had some difficulty here today in trying to decipher as to what is the truth and what are lies." Id. at 106; see id. at 109. Bennett's inconsistent versions of the crime caused concern that he "continue[d] to be unpredictable and a threat to others." Id. at 107. The commissioner also noted the absence of evidence that Bennett was addressing his substance abuse or "any relapse prevention." Id. at 107-08. The commissioner also thought Bennett's "attitude was certainly in need of an adjustment." Id. at 108. The 2007 denial was a three-year denial. The BPH specifically determined that it was "not reasonable to expect that parole would be granted at a hearing during the next three years," id. RT 109, and listed the reasons for that decision as the commitment offense, the inmate's disciplinary issues (including the CDC-115 in 2005 and a recent CDC-128 counseling memorandum in 2005), the inmate's prior criminal history, the "inconclusive" psychological evaluation, and the inmate's need for further programing. Id. at 109-112.

## DISCUSSION

Respondent moves to dismiss, arguing that habeas jurisdiction is lacking because Bennett does not challenge the fact or duration of his confinement. Respondent urges that the claims must be pursued in a civil rights complaint under 42 U.S.C. § 1983 rather than in a habeas petition. Bennett opposes, arguing that habeas jurisdiction is not limited to cases that affect the fact or duration of confinement. The question is a bit more difficult than simply choosing between habeas and civil rights because this case falls in the murky waters where § 1983,

habeas, Heck and Sandin meet. These legal principles will be described to set the backdrop for the court's analysis that ultimately concludes that Bennett cannot state a claim for a federal due process violation, regardless of whether it is in a § 1983 complaint or a habeas petition. There is no point in dismissing a habeas action with directions to file a civil rights action if that too would have to be dismissed for failure to state a claim for a federal due process violation.

A.   Legal Principles

    1.   Habeas Versus Civil Rights Actions

"'Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 28 U.S.C. § 2254, and a complaint under the Civil Rights Act of 1871, Rev. Stat. § 1979, as amended, 42 U.S.C. § 1983. Challenges to the lawfulness of confinement or to particulars affecting its duration are the province of habeas corpus.'" Hill v. McDonough, 547 U.S. 574, 579 (2006) (quoting Muhammad v. Close, 540 U.S. 749, 750 (2004)). "An inmate's challenge to the circumstances of his confinement, however, may be brought under § 1983." Id.

Traditionally, challenges to prison conditions have been cognizable only via a § 1983 civil rights action, while challenges implicating the fact or duration of confinement must be brought through a habeas petition. Docken v. Chase, 393 F.3d 1024, 1026 (9th Cir. 2004). The two remedies are not always mutually exclusive, however. Id. at 1031; see also id. at 1027 n.2. The Ninth Circuit has permitted habeas to be used to assert claims that are "likely to accelerate" eligibility for parole, even though success in such cases would not necessarily implicate the fact or duration of confinement. Id. at 1028 (citing Bostic v. Carlson, 884 F.2d 1267 (9th Cir. 1989), and Ramirez v. Galaza, 334 F.3d 850, 858 (9th Cir. 2003), cert. denied, 541 U.S. 1063 (2004)). Though rich with broader pronouncements to the effect that § 1983 and habeas overlap in many respects, the actual holding in Docken was somewhat narrower: "when prison inmates seek only equitable relief in *challenging aspects of their parole review* that, so long as they prevail, could potentially affect the duration of their confinement, such relief is available under the federal habeas statute." Docken, 393 F.3d at 1031 (emphasis added).

4

In Ramirez v. Galaza, 334 F.3d at 859, the Ninth Circuit held that "habeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence." The district court had dismissed a prisoner's § 1983 complaint challenging disciplinary decisions as barred by Heck because the prisoner had not yet had the disciplinary sentence invalidated. Ramirez, 334 F.3d at 853. The appellate court reversed, concluding that the plaintiff could challenge the decision under § 1983 because the Heck "rule does not apply to § 1983 suits challenging a disciplinary hearing or administrative sanction that does not affect the overall length of the prisoner's confinement." Id. at 858.

The foregoing cases do not answer the question of whether there is a claim for a violation of a constitutional right, such as a right to due process. Rather, they assume the existence of the right and concern which kind of action – habeas or § 1983 – to use to pursue a claim based on the violation of that right.

2.   The Heck Rule

The favorable termination rule in Heck v. Humphrey, 512 U.S. 477 (1994), bars a damages claim for unconstitutional imprisonment until the underlying erroneous decision is set aside. In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence or decision has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. Heck, 512 U.S. at 486-87. Normally, Heck bars a claim of unconstitutional deprivation of time credits because such a claim necessarily calls into question the lawfulness of the plaintiff's continuing confinement, i.e., it implicates the duration of the plaintiff's sentence. Sheldon v. Hundley, 83 F.3d 231, 233 (8th Cir. 1996). Heck also bars a claim for using the wrong Wolff v. McDonnell, 418 U.S. 539 (1974), procedures in a disciplinary hearing that has resulted in the deprivation of time credits if "the nature of the challenge to the procedures [is] such as necessarily to imply the invalidity of the judgment."

5

Edwards v. Balisok, 520 U.S. 641, 645 (1997). Thus, when a prisoner files a § 1983 action for damages based on a claim that his right to due process was violated during disciplinary proceedings that resulted in a loss of time credits, the Heck rule usually presents a problem because the prisoner cannot prevail without invalidating the disciplinary decision. His claim for damages does not accrue until the disciplinary decision has been set aside, so the action will be dismissed with a suggestion that the prisoner file a habeas petition if he wants to challenge the disciplinary decision.

Like the cases concerning the civil rights versus habeas distinction, these Heck cases do not really answer the question whether there is a claim for a violation of a constitutional right, such as a right to due process. Rather, they assume the existence of the right and concern when the civil rights action for damages may be pursued. To determine whether there is a cognizable claim for a violation of a constitutional right, one must look to Sandin and its progeny. In other words, one needn't dwell on the habeas versus civil rights choice or on Heck unless and until one has an actual claim for a violation of the laws, treaties or constitution of the United States.

### 3. Due Process Claims After *Sandin*

Interests that are procedurally protected by the Due Process Clause may arise from two sources--the Due Process Clause itself and laws of the states. See Meachum v. Fano, 427 U.S. 215, 223-27 (1976). In the prison context, these interests are generally ones pertaining to liberty. Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law. See Sandin v. Conner, 515 U.S. 472, 484 (1995) (citing Vitek v. Jones, 445 U.S. 480, 493 (1980) (transfer to mental hospital), and Washington v. Harper, 494 U.S. 210, 221-22 (1990) (involuntary administration of psychotropic drugs)). The disciplinary decision for Bennett did not involve a change so severe as to implicate the Due Process Clause itself.

Deprivations that are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest,

6

provided that state statutes or regulations narrowly restrict[2] the power of prison officials to impose the deprivation and that the liberty in question is one of "real substance." See Sandin, 515 U.S. at 477-87. An interest of "real substance" will generally be limited to freedom from restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"[3] or "will inevitably affect the duration of [a] sentence." Sandin, 515 U.S. at 484, 487.

The second kind of interest of real substance – i.e., an inevitable effect on the duration of a sentence – has received scant attention from courts compared with that devoted to identifying "atypical and significant" hardships. Indeed, the most illuminating discussion found for the second kind of interest of real substance is in Sandin itself, where the Court explained what does not qualify as such an interest. Sandin determined that the possible effect of a disciplinary decision on parole consideration did not show that the disciplinary decision would inevitably affect the duration of the plaintiff's sentence. See id. at 487. State law did not require

---

[2] A state most commonly restricts the power of prison officials by establishing "substantive predicates" to govern official decisionmaking, i.e., "particularized standards or criteria to guide the [s]tate's decisionmakers," and then requiring, "in explicitly mandatory language," that if the substantive predicates are met, a particular outcome must follow. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 461-64 (1989).

There is some uncertainty as to whether Sandin has eliminated the requirement that state law narrowly restrict the power of prison officials to impose the deprivation and instead requires only that there be an interest of real substance to determine that an inmate has a right to due process before being deprived of that interest. See Carver v. Lehman, No. 06-35176, slip op. 6509, 6517 n.6 (9th Cir. June 9, 2008) (Sandin's liberty interest inquiry is limited to internal prison decisions); Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) ("focus of the liberty interest inquiry is whether the challenged condition imposes an atypical and significant hardship"); Duffy v. Riveland, 98 F.3d 447, 457 (9th Cir. 1996) (implying that Sandin reformulated working definition of liberty interest to include only "real substance" prong). While there may be some uncertainty as to whether the court needs to find mandatory language creating the liberty interest, there is no uncertainty at all that an atypical and significant hardship or an inevitable effect on the duration of a sentence must exist to find that a liberty interest is protected by the Due Process Clause. See, e.g., Wilkinson v. Austin, 545 U.S. 209, 223 (2005) ("After Sandin, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'")

[3] There is nothing in the record to suggest that the "atypical and significant hardship" prong of Sandin is at issue, e.g., Bennett did not allege he suffered any loss of privileges or was sentenced to a term in disciplinary segregation. Therefore, this prong of Sandin is not further discussed.

7

1 "the parole board to deny parole in the face of a misconduct record or to grant parole in its
2 absence, . . . even though misconduct is by regulation a relevant consideration. . . . The decision
3 to release a prisoner rests on a myriad of considerations. . . . The chance that a finding of
4 misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees
5 of the Due Process Clause" Id. [4]  In sum, the impact of a disciplinary decision on a life inmate's
6 later parole decision is too speculative to say that the decision has the inevitable effect on the
7 duration of confinement that is necessary for federal due process protections to attach.

9 B.    There Was No Protected Liberty Interest; Hence No Right To Due Process
10       Upon being found guilty on the CDC-115, Bennett was assessed 91 days of behavioral
11 credits. If Bennett was in prison on a term of years, such a penalty apparently would inevitably
12 affect the duration of his confinement by making it 91 days longer than it otherwise would be.
13 However, Bennett is an indeterminate life inmate, who is 30 years into his 7-to-life sentence.
14 Neither respondent nor Bennett has identified any way in which those 91 days of credits matter
15 at this point in Bennett's sentence. They cannot extend his maximum term (as that is life), nor
16 can they extend his minimum term (as that was seven years and has long passed). The time
17 credit forfeiture imposed on Bennett did not inevitably affect the duration of his sentence. Under
18 the reasoning of Sandin, therefore, he had no protected liberty interest and therefore no federal
19 right to due process in the disciplinary proceedings. Without a federal right to due process, the
20 prisoner cannot state a claim for a due process violation, regardless of whether it is presented in
21 a habeas petition or in a § 1983 civil rights complaint.

22       The existence of a CDC-115 – regardless of whether time credits are forfeited – in a
23 prisoner's file does not help his chance for parole at a parole suitability hearing. However, the
24 disciplinary record is but one of many factors that go into the evaluation of the parole applicant.
25 Again, Sandin guides the analysis, as it recognized that a disciplinary decision that will be one

---

[4] Although Sandin's discussion pertained to statutes and regulations in Hawaii, California's statutes and regulations also permit the parole authority to consider a wide variety of factors in deciding whether an inmate is suitable for parole. See Cal. Penal Code § 3041, 3046; 15 Cal. Code Regs. §§ 2280-2292.

8

of a "myriad of considerations" in the parole suitability evaluation does not inevitably affect the duration of the  prisoner's sentence.  Sandin, 515 U.S. at 487.  "The chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause."  Id.  California's regulations allow the BPH to consider many circumstances to determine whether the life inmate is suitable for parole.  See 15 Cal. Code Regs. § 2281(c), (d).  Prison misconduct may be considered but is not the only circumstance, nor even the paramount one, in determining parole suitability.

Here, the CDC-115 had two effects on the parole consideration decisions, suggests Bennett.  First, Bennett had received several one-year denials at the four most recent hearings before he received the CDC-115 in 2005, but received a three-year denial at his next parole hearing in 2007.  He fails to persuade that the lengthier denial was the result of the 2005 CDC-115. The parole board's decision provided by Bennett plainly shows that there were numerous reasons for the three-year denial.  The 2007 BPH decision specifically stated that it was  "not reasonable to expect that parole would be granted at a hearing during the next three years," Opposition, Exh. 3, 8/13/07 RT 109, and listed the reasons for the three-year denial as the commitment offense, the inmate's disciplinary issues (including the CDC-115 in 2005 and a recent CDC-128 counseling memorandum in 2005), the inmate's prior criminal history, the "inconclusive" psychological evaluation, and the inmate's need for further programing.  Id. at 109-112. Second, Bennett seems to suggest the CDC-115 caused the denial in 2007.  The 2005 disciplinary offense  did not lead to a denial where parole otherwise would have been granted. As even the very limited portion of the 2004 transcript provided shows, the BPH did not promise Bennett parole if he stayed out of trouble for a year and the BPH appeared concerned in 2004 about Bennett's shifting accounts of the murder.  It can be said with certainty that the CDC-115 did not alone extend the length of Bennett's sentence.  He had no federally protected right to due process.[5]

---

[5]Almost any disciplinary decision has the potential to adversely impact the indeterminate-sentenced prisoner's parole prospects.  Even counseling memoranda may adversely affect the parole prospects.  Allowing their potential effect to be enough to show a protected liberty interest could well lead to federal court review of every CDC-115 and CDC-128 issued to life

United States District Court
For the Northern District of California

1   If the speculative impact on the parole consideration was alone sufficient to establish a
2  protected liberty interest in disciplinary proceedings – which the court has just determined it
3  does not – the claim would belong in a civil rights rather than a habeas action. The case that
4  most suggests such a claim can be brought in habeas is Docken, but even that case is
5  distinguishable because its holding was limited to cases in which "inmates seek only equitable
6  relief in challenging aspects of their parole review." Docken, 393 F.3d at 1031. Bennett does
7  not challenge some aspect of his parole review, but instead a separate disciplinary decision that
8  may in turn have some effect on some aspect of his parole review. He is more like the plaintiff
9  in Ramirez, in that he is challenging a disciplinary decision that will not necessarily shorten the
10 sentence and therefore should be pursued in a § 1983 action because habeas jurisdiction is
11 absent. Although Docken and Ramirez are helpful in ascertaining that a challenge to a
12 disciplinary decision would have to be brought in a § 1983 action rather than habeas, the court
13 reiterates that reliance on the reasoning of cases deciding one question (whether a claim should
14 be pursued in habeas versus civil rights) to find the answer to a different question (whether there
15 is a federal due process right) only confuses the analysis. For example, at first blush, Docken
16 seems to suggest that there need only be a potential (rather than an inevitable) effect on the
17 duration of the sentence for habeas relief to be available. However, the Docken petitioner did
18 not assert a due process claim but instead asserted an Ex Post Facto Clause claim based on the
19 parole board's refusal to provide him with annual review of his parole suitability. See 393 F.3d
20 at 1026; see id. at 1025 (reversing district court's dismissal of the petition as not proper under
21 habeas). Docken is unhelpful on the question of whether Bennett can state a due process claim
22 because Sandin's requirement of an inevitable effect on the sentence is for a due process claim,
23 not for other kinds of constitutional claims, such as ex post facto claims. Ramirez is unhelpful
24 in determining whether Bennett can state a due process claim for a different reason:

---

27 inmates. (Just this one prisoner could have been source for as many as 38 habeas petitions, as he had 19 CDC-115s and 19 CDC-128s in his file.) If federal judicial review extended to every
28 CDC-115 and CDC-128, there doesn't seem any sensible reason to stop there, as many other decisions (such as prison placement and job assignments in prison) might also potentially impact the parole decision and therefore also might qualify for judicial review.

10

the Ramirez plaintiff received a 24-month administrative segregation term, which might have been an atypical and significant hardship that is the other route to establishing the deprivation of a liberty interest of reals substance for Sandin purposes. See footnote 3, supra; Ramirez, 334 F.3d at 860-61.

To summarize, Bennett cannot state a claim for a violation of his rights under the Due Process Clause to the U.S. Constitution because the prison disciplinary decision in 2005 did not implicate a federally protected liberty interest. The decision led to the forfeiture of time credits, but that forfeiture will not inevitably affect the duration of confinement for this indeterminate-sentenced inmate who is long past his minimum parole date and whose parole suitability will depend on a myriad of circumstances. This is not a matter of whether the claim ought to be pursued in civil rights rather than in habeas, but rather whether there is a due process claim at all. The court concludes there is not. This action must be dismissed.

## CONCLUSION

For the foregoing reasons, respondent's motion to dismiss is GRANTED. (Docket # 9.) This action is DISMISSED for failure to state a claim upon which relief may be granted. Plaintiff's motion to attach state court exhibits to the petition is GRANTED. (Docket # 6.) The exhibits are part of the file. The clerk shall close the file.

IT IS SO ORDERED.

DATED: June 23, 2008

SUSAN ILLSTON
United States District Judge